IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | Case No. 1:20cr00358-001 |
| v. | ) | JUDGE SARA LIOI |
| ROBERT D. McWILLIAMS | ) | DEFENDANT'S SENTENCING MEMORANDUM |
| Respondent. | ) | |

## I.  INTRODUCTION

This Honorable Court should impose a lengthy sentence on Robert McWilliams that includes prison followed by a term of supervised release. A combination of a prison sentence and a term of supervised release constitutes a sentence that meets the purposes of sentencing set forth in 18 U.S.C. 3553 without being greater than necessary. Such a sentence will allow Robert McWilliams to secure the therapy necessary to confront demons from his childhood and the addictions and heinous behavior of his adulthood. A lengthy prison sentence is a foregone conclusion in this case -- the first 180 months are mandatory. But in light of McWilliams' being a good candidate for successful sex offender treatment, and in light of the availability of a supervised release term that, itself, can extend to the remainder of McWilliams' life, this Court need not throw away the key.

In calculating its sentence, this Court is asked to follow the precedent of district courts in the United States who have imposed sub-Guidelines sentences for the production and distribution of pornography. These courts have recognized that the Guidelines in cases such as the instant case are too high. As discussed below, that conclusion is more than simply an instinctive reaction on the part of these district judges. To the contrary, the Guidelines for the instant offenses are

fundamentally flawed by Congressionally-mandated offense levels and enhancements that (1) were not based on the methodology that earmarked Guidelines calculations for most, if not all, other offenses and (2) fail to distinguish between the types of conduct that can constitute these offenses and instead quantifies enhancements that apply in virtually every instance, thus leaving the Guidelines calculations as nothing more than a collection of across-the-board double-counting, as opposed to a rational and quantifiable gradation of conduct severity.

## II. ARGUMENT

### A. The Statutory Mandate: "Sufficient But Not Greater Than Necessary"

The focal point for any sentencing is 18 U.S.C. 3553, which provides in pertinent part:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

In the instant case, the mandatory fifteen year minimum prison sentence attendant to the most serious offenses in the indictment (Counts 3-5) assures that the sentence imposed by this Court will be sufficiently severe to reflect the seriousness of the offenses and deter others from committing them in the future. Moreover, a lengthy sentence, combined with the ample

opportunity for sex offender treatment while incarcerated for this extended period, will adequately protect the public and provide for rehabilitation. The Bureau of Prisons has established numerous programs designed with the goal of rehabilitation while a defendant serves his or her punishment of incarceration.

Significantly, this Court is not merely depending upon the prison system to work. By imposing a substantial period of supervised release as part of its sentence, this Court will have direct supervision over Robert McWilliams upon his release. Conditions of supervised release can include a prohibition from using computers, frequent inspections of his residence, continued therapy and regular reporting. This not only ensures public safety, it satisfies the public's need to feel protected. The supervisory branch of the United States Office of Probation is very good at their job and have advanced technological tools at their disposal to provide close supervision and protection of the public.

### B. The Sentencing Guidelines Are Not An Effective Tool to Effectuate the Statutory Mandate In This Case.

#### 1. Flawed Methodology

In most sentencings, the Sentencing Guidelines range "will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"*Kimbrough v. United States,* 552 U.S. 85, 109, 128 S.Ct. 558,169 L.Ed.2d 481(2007), quoting *Rita v. United States,* 551 U.S. 338, 350, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). There is often good reason that the Guidelines will be the starting point for fashioning an appropriate sentence:

> Congress established the Commission to formulate and constantly refine national sentencing standards. See *Rita*, 551 U.S. at 347 – 350, 127 S.Ct. 2456, 2464 – 2465, 168 L.Ed.2d 203. Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *United States v. Pruitt,* 502 F.3d 1154, 1171 (C.A.10 2007) (McConnell, J., concurring); see *supra,* at 1171.

*Kimbrough,* 552 U.S. at 108-09.

But the Guidelines applicable to the instant offenses are not the product of the Commission's established methodology. Rather:

> [T]he Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. See United States Sentencing Commission, The History of the Child Pornography Guidelines, Oct. 2009, available at http://www.ussc.gov/general/20091030_History_Child_Pornography_ Guidelines.pdf (last visited April 19, 2010).7 Alan Vinegrad, *185 the former United States Attorney for the Eastern District of New York, has noted that the recent changes effected by the PROTECT Act of 2003 evince a "blatant" disregard for the Commission and are "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress."
>
> * * *
>
> The Commission has often openly opposed these Congressionally directed changes. In 1991, as Congress was considering a proposal to direct the Commission to alter the child pornography Guidelines (by revoking the Commission's earlier creation of a new, lower base level for receipt, possession, and transportation of images than for sale or possession with intent to sell), the Chair of the Commission wrote to the House of Representatives stating that the proposed Congressional action "would negate the Commission's carefully structured efforts to treat similar conduct similarly and to provide proportionality among different grades of seriousness," and would instead "require the Commission to rewrite the guidelines for these offenses in a manner that will reintroduce sentencing disparity among similar defendants." See Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, January 1, 2009, at 4–9, available at http://www.fd. org/pdf_lib/child% 20porn% 20july% 20revision.pdf (unpublished Comment, last visited *186 July 28, 2010).

*United States v. Dorvee,* 616 F.3d 174, 184-86 (2d Cir. 2010).

### 2. Arbitrary Result

The result of this departure from normal Guidelines methodology has been as the Sentencing Commission feared: A disparately severe set of Guidelines that makes unreasonable

assessments of offense severity. *Dorvee.* This disparity is manifested in multiple aspects of Guidelines Section 2.2. For example, the Level 22 base offense for Count Group 1 (the operative group) in the instant case was increased over time from Level 13 to Level 22. Moreover, the enhancements for use of a computer (2 levels), prepubescent minor (2),, and more than 600 images (5) apply so pervasively in these cases that they fail to serve as legitimate distinctions to justify increasing the severity of the offense beyond its normal commission. *Dorvee* succinctly addresses the problem:

> The § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases. The base offense level for distribution of child pornography, which in 1991 was 13, has been gradually increased to 22 as the Commission has attempted to square the Guidelines with Congress's various directives. *See* United States Sentencing Commission, *The History of the Child Pornography Guidelines, supra,* at 19. On top of that, many of the § 2G2.2 enhancements apply in nearly all cases. Of all sentences under § 2G2.2 in 2009, 94.8% involved an image of a prepubescent minor (qualifying for a two-level increase pursuant to § 2G2.2(b)(2)), 97.2% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)), 73.4% involved an image depicting sadistic or masochistic conduct or other forms of violence (qualifying for a four-level enhancement pursuant to § 2G2.2(b)(4)), and 63.1% involved 600 or more images (qualifying for a five-level enhancement pursuant to § 2G2.2(b)(7)(D)).[9] *See* United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics for Fiscal Year 2009,* available at http://www.ussc.gov/gl_ freq/09_glinexgline.pdf (last visited April 19, 2010). In sum, these enhancements, which apply to the vast majority of defendants sentenced under § 2G2.2, add up to 13 levels, resulting in a typical total offense level of 35.

*Durvee,* 616 F.3d at 186.

    C.    **Sub-Guidelines Sentences are Common**

Consistent with these disparities, district courts throughout the United States are departing below the Guidelines in pornography production cases. According to the most recent data available, 57 percent of production cases were sentenced below the Guidelines. *See* United States Sentencing Commission, *Federal Sentencing of Child Pornography: Production Offenses*

5

(October, 2021) at 22, available online at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (last viewed November 3, 2021). The average production defendant received a sentence of 275 months in 2019. *Id.,* at 44. First offenders' sentences averaged 267 months. *Id.,* at 51. Even when sexual contact was involved (which is approximately eighty percent of the time), the average sentence was 334 months, regardless of criminal history. *Id.* at 6, 51. Moreover, the majority of production defendants received the 5-level pattern of conduct enhancement under USSG §4B1.5(b)(1), as did McWilliams -- this enhancement does not place him apart from the norm. *Id.* at 19.

### D. Mitigation: First Offense, In-Prison Therapy and Supervised Release

The offense conduct in this case should not be minimized. But neither should the mitigation. Unlike some Criminal History Category I criminal defendant, Robert McWilliams does not have old convictions or non-traffic misdemeanor convictions that did not count. He is truly a first offender (other than minor traffic infractions). *See, United States v. White*, 506 F.3d 635 (8th Cir. 2007) (in case of distribution of child porn case where guidelines were 108-135, variance to 72 months imposed because conviction was defendant's first offense, rejecting government's argument that court may not consider defendant's lack of prior record because already taken into account by guidelines; court can consider lack of criminal record apart from the guidelines).

Robert McWilliams is a good candidate for rehabilitation through therapy -- and he will have ample time to engage in therapy while incarcerated. Issues relating to therapy have been and will be addressed outside of this memorandum. (See Supplemental materials filed under seal). Similarly, and as discussed in Part A, there will still be a period of supervised release --

which can be of any length the Court desires and which can include severe restrictions and/or prohibitions on the use of media and other forms of communication that may be in existence at the time of release. The defense does not argue that any of these measures are a substitute for a prison term. Rather, it is suggested that they are legitimate resources that can be utilized by courts in tandem with a reasonable period of incarceration that would serve all of the objectives of sentencing.

## CONCLUSION

The defense arguments herein or those presented at the sentencing hearing should in any way be understood to diminish the harm to the victims in this case. Nor should the arguments in any way be construed as any justification whatsoever for the defendant's actions herein. This court has the ability to impose a life sentence in this case. A life sentence can be comprised of both time behind bars and intense supervision in the community. The question to be determined, and entrusted to the sound discretion of this Court pursuant to 18 U.S.C. 3553(a) is to define what in *this* case is "sufficient, but not greater than necessary" punishment.

Based upon the foregoing arguments, as well as the characteristics and life history of this defendant, the defense contends that a life sentence would be greater than necessary to satisfy all objectives of sentencing. Given his age, even a lengthy non-life sentence will constitute the equivalent of a life sentence. Therefore, the Defense respectfully requests that this Honorable Court balance the needs for punishment and deterrence of others with rehabilitation and a chance for redemption.

                                              Respectfully submitted,

                                              /s/ Robert A. Dixon
                                              ROBERT A. DIXON
                                              Attorney for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2021, a true and correct copy of the foregoing has been filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Robert A. Dixon
ROBERT A. DIXON
Attorney for Defendant